**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| COREY L. SHERWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-CV-03078-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Corey Sherwood seeks review of the Administrative Law Judge's decision denying his application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is reversed, and the case is remanded for the purpose of awarding benefits to Sherwood.

### I. Background

#### A. Medical History

Sherwood is forty-two years old with a high-school education. He has a learning disability, and was enrolled in special education classes for reading, writing, and math throughout much of school. He has previously worked as a sorter and laborer.

In April 2008, Sherwood began seeking medical treatment for back and knee pain. He saw Dr. Ronald Pak, who noted that Sherwood exhibited a "spastic gait quality" and had difficulty with single leg balance and decreased fine and gross motor coordination. Tr. at 500. Dr. Pak stated that Sherwood likely would not be able to function in a

1

competitive work place. Tr. at 500. Sherwood also saw Ryan VanWinkle, MS, LPC. VanWinkle noted that Sherwood exhibited limited intellectual functioning, did not know the current month, and was unable to complete serial sevens without a number of mistakes. Tr. at 503. Throughout the rest of 2008 and 2009, Sherwood saw a series of doctors regarding his leg and knee pain and was prescribed a number of drugs for pain management, including Tramadol, Darvocet, and Naprosyn.

In November 2008, Sherwood saw Robert Forsyth, Ph.D., for a psychological consultation and intelligence testing. Sherwood exhibited lowered intellectual functioning. Tr. at 518. Dr. Forsyth noted that Sherwood could not name four presidents since 1950 and did not know the number of weeks in a year. *Id.* Dr. Forsyth stated that Sherwood's social judgment and abstract conceptual thinking skills were poor. *Id.* Dr. Forsyth gave Sherwood the Wechsler Adult Intelligence Scale test (WAIS-III), on which Sherwood achieved a verbal IQ score of 64, a performance IQ score of 78, and a full-scale IQ score of 67. *Id.* Dr. Forsyth diagnosed Sherwood with reactive mood disorder, learning disability, and substance abuse in remission, with borderline intellectual functioning. Tr. at 519.

In January 2009, Kenneth Burstin, Ph.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on behalf of the state. Tr. at 526-540. He opined that Sherwood had borderline intellectual functioning and an anxiety disorder. *Id.* He stated that Sherwood would have marked limitations carrying out detailed instructions. *Id.* Despite these limitations, Dr. Burstin found that Sherwood could perform at least simple instructions and relate adequately to others in settings that

2

do not require frequent public contact, and could adapt to non-complex changes. Tr. at 540.

In March 2009, Sherwood saw Diedra Hayman, Ph.D., for an initial psychological assessment. Dr. Hayman stated that Sherwood's insight and judgment were impaired due to his borderline intellectual functioning. Tr. at 564. She noted that his anxiety mainly centered on his physical health. *Id.*

In May 2009, Sherwood presented to OMC Orthopedics for evaluation of his knee pain. He stated that the pain in his knee had a stabbing quality. Tr. at 635. On exam, he had abnormal reflexes. *Id.* EGD and biopsy testing revealed esophagitis, chronic gastritis of the entire stomach, and bursitis. Tr. at 572, 579, 584. Later that month Sherwood was diagnosed with bilateral patellofemoral syndrome and bursitis. Tr. at 631. In September and October Sherwood reported some improvement in his knee pain with rehabilitation and physical therapy. By the end of October, his physical therapy had stopped providing any relief and Sherwood was diagnosed with chondrolamacia. Tr. at 629. In November he underwent a left knee arthroscopy and chondroplasty of the left femoral condyle. Tr. at 738-739. In December he received a shot of cortisone in his left knee. Tr. at 625.

Throughout 2010, Sherwood continued to attend regular appointments about his knee and refill his prescriptions for pain medication. In November 2010, Sherwood saw Dr. Michael Clarke for an orthopedic evaluation. Tr. at 721. Dr. Clarke noted tenderness to palpation of Sherwood's abdomen, but that his knees were stable. He further noted that Sherwood was "probably depressed." Tr. at 722.

3

In September 2011, James Spence, Ph.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment and reported that Sherwood had a learning disorder, borderline intellectual functioning, and reactive mood disorder. Tr. at 687-688. He stated that Sherwood would be capable of simple, routine tasks. *Id.*

In June 2012, Dr. Michael Ball completed a Mental Residual Functional Capacity Assessment and reported that Sherwood was limited in what he could lift, the amount of time he could stand and sit, and could never climb, crouch, kneel, or crawl. Tr. at 774-775. He also stated that Sherwood would have marked limitations completing a normal work day or work week without interruption from psychologically-based symptoms, and be limited in his ability to perform at a consistent pace without an unreasonable number of rest periods. Tr. at 777-778.

In September 2012, Dr. Herschel Goren completed medical interrogatories at the request of the ALJ. Tr. at 743-750. Dr. Goren concluded that Sherwood met Listing 12.05(c) as of November 19, 2008. Tr. at 760. He noted that Sherwood had moderate limitations carrying out complex instructions. Tr. at 762.

In October 2012, Dr. Stephen Williamson performed a consultative examination. Tr. at 780-796. He stated that Sherwood was positive for weight gain, headaches, lightheadedness, muscle pain, joint swelling, redness, limitation of motion, muscular weakness, cramps, chest pain, dyspnea on exertion, edema, leg pain, difficulties with memory, poor muscular coordination, shortness of breath, heartburn, nausea, and

4

vomiting.  Tr. at 782.  Dr. Williamson opined that Sherwood could lift up to fifty pounds occasionally and could occasionally kneel and crouch.  Tr. at 786.

### B.  ALJ Decision

Sherwood appeared at a hearing before an ALJ on October 26, 2010.  Tr. at 54-73. He testified that he became disabled in April 2007, stating that his legs hurt all the time, he fell down a lot, and his knees often gave out.  He testified that his medication did not provide much relief.  Sherwood stated that he could not read or write.  Following the hearing, the ALJ denied Sherwood benefits.  The Appeals Council reviewed and remanded the decision denying benefits.

Following remand, Sherwood appeared and testified at another hearing on October 16, 2012.  Tr. at 37-52.  Sherwood testified that he has a twelfth grade education, but was in special education for reading, writing, and math.  He stated that he lives alone in a camper and does not have a driver's license.  He noted that he cannot pay his own bills and his sister and friends help him with his bills and chores around the house.

The ALJ concluded that Sherwood had not engaged in substantial gainful activity since April 1, 2007.   He further stated that Sherwood had the following severe impairments: mild lumbar degenerative disc disease, cartilage degeneration in the left knee, obesity, borderline intellectual functioning, learning disability, anxiety, substance abuse disorder, and reactive mood disorder.  Tr. at 15.  He then found that Sherwood's impairments did not meet or equal a listed impairment.  Tr. at 16.  The ALJ assessed Sherwood with the following residual functional capacity (RFC):

Case 6:14-cv-03078-NKL   Document 12   Filed 10/24/14   Page 5 of 13

> Less than the full range of light work. The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The claimant can never climb or balance and is limited to occasional pushing/pulling with the lower extremities. He must avoid unprotected heights and hazards, moving machinery. The claimant can perform simple work but is limited to jobs that do not demand attention to details or complication job tasks or instructions. He is limited to occupations that require only occasional interaction/cooperation with the general public. The claimant retains the ability to maintain attention and concentration for minimum 2-hour periods at a time and to adapt to changes in the workplace on a basic level.

Tr. at 17. In making this determination, the ALJ afforded great weight to the opinions of Dr. Clarke and Dr. Williamson. He found that though Sherwood's limitations were a bit more restricting than reflected in Dr. Williamson's opinion, the doctor's opinion was generally consistent. The ALJ afforded limited weight to Dr. Ball's opinion and no weight to Dr. Ball's mental assessment. The ALJ noted Dr. Goren's statement that Sherwood met Listing 12.05(c). However, the ALJ found that there was no manifestation of impairments prior to age twenty-two, and Sherwood's ability to complete daily activities and historic ability to work conflicted with Dr. Goren's evaluation. Tr. at 23. He then afforded limited weight to Dr. Goren's opinion. Relying on vocational testimony, the ALJ concluded that Sherwood could complete such work as a bakery racker, stock checker, or housekeeper.

## II.    Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the

Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

### III. Discussion

Sherwood argues the ALJ did not properly consider whether Sherwood meets Listing 12.05(c). The Court agrees.

In evaluating whether a claimant is disabled, the ALJ must consider whether the claimant qualifies for benefits based on the Listing of Impairments. 20 C.F.R. Part 404 Subpart P Appx. 1. If the claimant's disabilities equal or exceed an impairment in the Listings, the claimant must be found disabled and awarded benefits. *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004). Sherwood argues that he should be awarded benefits because his disabilities meet Listing 12.05(c), which requires the claimant to show:

> (1) a valid verbal, performance, or full scale IQ of 60 through 70;
> (2) an onset of the impairment before age 22; and
> (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). At prong two, the claimant must also show deficits in adaptive functioning initially manifested before age 22. *Id.* If Sherwood meets Listing 12.05(c), he is entitled to benefits, regardless of whether he can perform gainful activity. *Id.* at 901.

7

The ALJ did not consider whether Sherwood was disabled according to Listing 12.05(c) when discussing whether he qualified for benefits based on other Listings. Tr. at 16-17. The only discussion of Listing 12.05(c) in the ALJ's opinion occurred in the ALJ's explanation of Sherwood's RFC. In determining the RFC, the ALJ noted that Dr. Goren, an independent medical expert, submitted responses to interrogatories in which he stated that Sherwood met the qualifications of Listing 12.05(c). The ALJ concluded that Dr. Goren's opinions should not be given significant weight because Dr. Goren did not address Sherwood's current activities and Dr. Goren stated that Sherwood had no more than "moderate" limitations in his ability to adapt and function. Tr. at 23.

Though the ALJ discussed Dr. Goren's opinion regarding Sherwood's qualifications under the Listing, he did not consider the entirety of the record to determine whether Sherwood met Listing 12.05(c). While an ALJ does not commit error simply by failing to discuss one of the listed impairments, the ALJ's overall conclusion must be supported by the record. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). The ALJ's conclusion is not supported by the record in this case.

Upon a comprehensive review of the record, it is clear that Sherwood qualifies for benefits pursuant to the Listing. First, Sherwood's IQ falls within the parameters of prong one of the Listing. Dr. Forsyth gave Sherwood an IQ test in November 2008. Tr. at 517-519. The doctor stated that Sherwood gave good efforts on the tests, and the results were valid indicators of his abilities. Tr. at 517. Sherwood's verbal IQ score was 64 and full-scale IQ score was 67. Tr. at 518. Both of these scores fall within the range of 60-70, as required by the Listing.

8

The second prong of the Listing requires that Sherwood have "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." *Gasaway v. Apfel*, 195 F.3d 345 (8th Cir. 1999) (citations omitted). Sherwood must suffer from deficits in adaptive functioning in order to qualify for benefits under the Listing. *Cheatum v. Astrue*, 2010 WL 2982819, at *1 (8th Cir. 2010). Despite Sherwood's treatment history for physical and mental disabilities, the ALJ concluded that "there is no evidence regarding manifestation of deficits in adaptive functioning prior to the age of 22." Tr. at 23.

The ALJ stated that Sherwood's activities of daily living and prior work history indicate he does not suffer from deficits in adaptive functioning. Specifically, the ALJ noted that Sherwood was able to graduate high school and work regularly between 1989 and 2008. Tr. at 23, 325-326. The ALJ further noted that Sherwood stated he quit his lumber yard job because he could not handle the walking and standing the job required, not because he had a hard time keeping up at work. Tr. at 500. Sherwood also lived alone in a camper, cared for his personal needs, shopped, completed household chores, and prepared simple meals. Tr. at 23, 39, 340-343, 409-410.

While Sherwood may be somewhat independent, the evidence on the record suggests that he is far more limited than the ALJ concluded. Though Sherwood worked off and on for nineteen years, he only achieved substantial gainful activity for three years. Tr. at 291-293. Sherwood found most of his jobs through temporary services because he could not maintain a job for an extended period of time. *Id.*

9

Sherwood's ability to do household chores, shop, drive, and prepare simple meals also does not necessarily indicate that he does not have deficits in adaptive functioning. The Eighth Circuit has consistently held that "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *see also Draper v. Barnhart*, 425 F.3d 1127, 1130-31 (8th Cir. 2005). Though Sherwood lives alone, he lives on the same property as a friend who assists him daily with chores including dishes and laundry. Tr. at 41, 44. He cannot pay his own bills. Tr. at 41. Sherwood cannot read, write, or make a grocery list. Tr. at 40. His limited ability to do some chores and live somewhat independently does not indicate that he is capable of adaptive functioning.

Sherwood's mental deficits also impede his functioning. VanWinkle noted that Sherwood was unable to identify the current month and stated that his functioning was in the range of borderline to mild mental retardation. Tr. at 503-504. Dr. Forsyth stated that Sherwood had lowered intellectual functioning, poor social judgment skills, could not name four presidents since 1950, and did not know the number of weeks in a year. Tr. at 518. Dr. Hayman noted that Sherwood had limited insight and judgment due to intellectual deficits. Tr. at 564. All of these conclusions suggest that Sherwood has difficulties with adaptive functioning.

Despite extensive medical evidence on the record supporting the conclusion that Sherwood suffers from mental deficiencies, the ALJ found that Sherwood's testimony regarding his disability was not credible. The ALJ noted that Sherwood reported

depression but received very little mental health treatment. He also noted that Sherwood was only evaluated at Behavioral Healthcare because his lawyer sent him, and cited primarily physical limitations for his inability to work. Given Sherwood's mental limitations, neither of these facts suggest that Sherwood is capable of maintaining substantial gainful activity. Sherwood's doctors' reports indicate that his mental functioning is substantially limited.

The Commissioner's reliance on *Miles v. Barnhart* as evidence of Sherwood's adaptive capacity is misplaced. 374 F.3d 694. In *Miles*, the claimant attended regular classes in high school, received grades of B, and completed a vocational training program. *Id.* at 699. At the time of the hearing the claimant was also working five days a week, eight hours a day. *Id.* In concluding that the claimant had sufficient adaptive capacity, the court specifically noted that the validity of the claimant's IQ scores had been called into question and the claimant had not been enrolled in special education classes in school. *Id.* Dr. Forsyth specifically noted in this case that the results of Sherwood's IQ were valid indicators of his abilities. Tr. at 517. Sherwood also has a history of special education classes. Unlike the claimant in *Miles*, Sherwood was not working when he made his request for social security benefits, and only achieved substantial gainful activity for three out of nineteen years.

The record also contains substantial evidence that Sherwood's disabilities manifested before age 22. Throughout his time in school, Sherwood was enrolled in special education classes for reading, writing, and math. Tr. at 39, 500. Even in special education classes, he received poor grades. Tr. at 471-475. The Eighth Circuit has held

11

that evidence of participation and struggle in special education classes is sufficient evidence that a claimant's mental disabilities manifested prior to age 22. *Christner v. Astrue*, 498 F.3d 790 (8th Cir. 2007); *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006). As such, the record is clear that Sherwood's disabilities manifested prior to age 22 to satisfy prong two of the Listing.

The third prong of the Listing requires a showing of "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at 899. In order to satisfy prong three, the additional impairments need only have a *de minimus* impact on Sherwood's ability to work, the same standard that dictates whether an impairment will be considered severe for the purposes of the disability analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The ALJ concluded that Sherwood has the following severe impairments: mild lumbar degenerative disc disease, cartilage degeneration of the left knee, obesity, borderline intellectual functioning, learning disability, anxiety, substance abuse disorder, and reactive mood disorder. Tr. at 15. In light of the ALJ's conclusions regarding Sherwood's impairments, Sherwood meets prong three of Listing 12.05(c).

As Sherwood meets all three prongs of Listing 12.05(c), he is entitled to benefits from April 1, 2007, his disability onset date.[1]

---

[1] Sherwood also alleges several other points of error. However, because the Court finds that the ALJ erred by not finding Sherwood disabled under Listing 12.05(c), the Court need not discuss Sherwood's other points of error.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for the purpose of awarding benefits to Sherwood.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 24, 2014
Jefferson City, Missouri